# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**Thomas Calvert Scott and Tammi Lynn Scott**<br>        **Debtors** | **CASE NO. 20-35029**<br><br>**CHAPTER 7** |
| **Kevin M. Epstein,**<br>**United States Trustee,**<br><br>        **Plaintiff**<br>v.<br><br>**Thomas Calvert Scott and Tammi Lynn Scott**<br>        **Defendants** | **ADV. PROC. NO. 21-03057** |

## WITNESS AND EXHIBIT LIST

| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION | |
|---|---|
| Main Case No: 20-35029 | Name of Debtors: Thomas Calvert Scott and Tammi Lynn Scott |
| Adversary No: 21-03057 | Style of Adversary: Kevin M. Epstein, United States Trustee<br><br>v.<br><br>        Thomas Calvert Scott & Tammi Lynn Scott |
| | |
| Witnesses: Thomas Scott | |
| Tammi Scott | Judge: The Honorable Eduardo V. Rodriguez |
| Dina Cline | Courtroom Deputy: Ana Castro |
| Spencer Wright | Hearing Date: July 14, 2021 |
| Alicia Barcomb | Hearing Time: 3:30 p.m. |
| Any witness called by any other | Party's Name: United States Trustee |
| Party | Attorney's Name: Alicia Barcomb |
| | Attorney's Phone: 713-718-4650 |
| | Nature of Proceeding: Plaintiff's Motion for Default Judgment |

EXHIBITS

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|-------|-------------|---------|-----------|------------------------|-------------|
| 1 | Summons Issued on Thomas Calvert Scott and Tammi Lynn Scott (ECF # 4, 4-1) | | | | |
| 2 | Summons Execution on Thomas Calvert Scott and Tammi Lynn Scott (ECF # 5, 6) | | | | |
| 3 | Certificate of Service of Order Setting Hearing (ECF # 15) | | | | |
| 4 | Verified Statement for Entry of Default and Regarding Defendants' Military Status by A. Barcomb | | | | |
| 5 | DOD Search on Tammi Lynn Scott, run May 24, 2021 | | | | |
| 6 | DOD Search on Thomas Calvert Scott, run May 24, 2021 | | | | |
| 7 | Transcript of 341 Meeting held November 24, 2020 | | | | |
| 8 | Schedule I (ECF # 31) | | | | |
| 9 | CLEAR Records Search of Thomas Calvert Scott | | | | |
| 10 | Affidavits by Dina Cline and Spencer Wright regarding military service of Thomas Calvert Scott | | | | |
| 11 | USPS Tracking Receipt (# 4979) | | | | |
| 12 | USPS Tracking Receipt (# 4986) | | | | |
| 13 | Any exhibit introduced by any other party | | | | |

SIGNED on July 12, 2021.

Respectfully submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN
DISTRICTS OF TEXAS

By:      /s/ Alicia L. Barcomb
         Alicia L. Barcomb
Texas Bar No. 24106276
515 Rusk, Suite 3516
Houston, Texas  77002
(713) 718-4650
(713) 718-4670 Fax

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon the following parties by email or ECF transmission where noted, on July 12, 2021.

/s/Alicia L. Barcomb
Alicia L. Barcomb

<u>DEFENDANTS</u>:
Thomas Calvert Scott                    (Via Email at: tcscott2002@yahoo.com)
Tammi Lynn Scott                        (Via Email at: tammidaniel@ymail.com)
5710 Savanna Pasture Road
Katy, TX 77493

<u>PARTIES IN INTEREST</u>:
Spencer Wright and Dina Cline           (Via E-mail at: bsingh@ts-llp.com)
c/o Brendon Singh
2502 La Branch St.
Houston, TX 77004

# United States Bankruptcy Court

_____ Southern___ District Of__Texas_____

**In re** ___Thomas Calvert Scott and Tammi Lynn Scott__,  )
Debtor                                                )      Case No. __20-35029__
                                                      )
                                                      )      Chapter __7_____
____U.S. Trustee, Region 7, Kevin M. Epstein____,     )
Plaintiff                                             )
                                                      )
   v.                                                 )
_____Thomas Calvert Scott_____,              )      Adv. Proc. No. _21-03057__
Defendant                                             )


## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | United States Bankruptcy Clerk<br>Southern District of Texas<br>PO Box 61010<br>Houston, TX  77208 |
| --- | --- |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | Alicia L. Barcomb<br>Office of the United States Trustee<br>515 Rusk, Ste. 3516<br>Houston, TX  77002 |
| --- | --- |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

*Nathan Ochsner, Clerk of Court*

Date: April 20, 2021

*s/ H. Lerma*
*Signature of Clerk or Deputy Clerk*

# United States Bankruptcy Court

_____ Southern___ District Of__Texas_____

**In re** _Thomas Calvert Scott and Tammi Lynn Scott_ ,   )
                        Debtor                            )   Case No. __20-35029__
                                                         )
          _U.S. Trustee, Region 7, Kevin M. Epstein_ ,   )   Chapter __7_____
                        Plaintiff                        )
                                                         )
          v.                                             )
          _____Tammi Lynn Scott_____ ,       )   Adv. Proc. No. __21-03057__
                        Defendant                        )


## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | United States Bankruptcy Clerk<br>Southern District of Texas<br>PO Box 61010<br>Houston, TX  77208 |
| --- | --- |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | Alicia L. Barcomb<br>Office of the United States Trustee<br>515 Rusk, Ste. 3516<br>Houston, TX  77002 |
| --- | --- |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_Nathan Ochsner, Clerk of Court_

Date: April 20, 2021_____

_s/ H, Lerma_
_Signature of Clerk or Deputy Clerk_

# United States Bankruptcy Court

_____ Southern__ District Of__Texas_____

**In re** __Thomas Calvert Scott and Tammi Lynn Scott__,  )
                              Debtor                                          )   Case No.  _20-35029_
                                                                                   )
__U.S. Trustee, Region 7, Kevin M. Epstein__,                  )   Chapter _7_____
                              Plaintiff                                      )
                                                                                   )
         v.                                                                   )
_____Thomas Calvert Scott_____,          )   Adv. Proc. No. _21-03057_
                              Defendant                                   )

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | United States Bankruptcy Clerk |
|---|---|
| | Southern District of Texas |
| | PO Box 61010 |
| | Houston, TX  77208 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | Alicia L. Barcomb |
|---|---|
| | Office of the United States Trustee |
| | 515 Rusk, Ste. 3516 |
| | Houston, TX  77002 |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

*Nathan Ochsner, Clerk of Court*

Date: _April 20, 2021_____

*s/ H. Lerma*
*Signature of Clerk or Deputy Clerk*

000007

# CERTIFICATE OF SERVICE

I, __Alicia L. Barcomb_____, certify that I am, and at all times during the
                        (name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
____April 21, 2021_____ by:
        (date)

VIA REGULAR AND CERTIFIED MAIL

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

> Thomas Calvert Scott
> 5710 Savanna Pasture Road
> Katy, TX 77493

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                    (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____April 21, 2021_____          Alicia Barcomb   Digitally signed by Alicia Barcomb
                                                        Date: 2021.04.21 14:27:46 -05'00'
        Date                          _____
                                                        Signature

| Print Name | Alicia L. Barcomb | | | |
|---|---|---|---|---|
| Business Address | Office of the United States Trustee 515 Rusk; Suite 3516 | | | |
| City | Houston | State | TX | Zip 77002 |

# United States Bankruptcy Court

_____ Southern ___ District Of __ Texas _____

**In re** __ Thomas Calvert Scott and Tammi Lynn Scott __ ,  )
<br>Debtor )

Case No. __ 20-35029 __

)

)

Chapter __ 7 _____

_____ U.S. Trustee, Region 7, Kevin M. Epstein _____ ,  )
<br>Plaintiff )

)

)

v. )

_____ Tammi Lynn Scott _____ ,  )
<br>Defendant )

Adv. Proc. No. __ 21-03057 __

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| Address of Clerk | United States Bankruptcy Clerk<br>Southern District of Texas<br>PO Box 61010<br>Houston, TX  77208 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney | Alicia L. Barcomb<br>Office of the United States Trustee<br>515 Rusk, Ste. 3516<br>Houston, TX  77002 |
|---|---|

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

*Nathan Ochsner, Clerk of Court*

Date: April 20, 2021 _____

*s/ H. Lerma* _____
<br>*Signature of Clerk or Deputy Clerk*

## CERTIFICATE OF SERVICE

000009

I, ___Alicia L. Barcomb_____, certify that I am, and at all times during the
                      (name)

service of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
_____April 21, 2021_____ by:
            (date)

VIA REGULAR AND CERTIFIED MAIL

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

Tammi Lynn Scott
5710 Savanna Pasture Road
Katy, TX 77493

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed
to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                        (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

____April 21, 2021_____              **Alicia Barcomb**  Digitally signed by Alicia Barcomb
                                                                    Date: 2021.04.21 14:40:47 -05'00'
Date                                              _____
                                                  Signature

| Print Name | Alicia L. Barcomb | | | | |
|---|---|---|---|---|---|
| Business Address | Office of the United States Trustee 515 Rusk; Suite 3516 | | | | |
| City | Houston | State | TX | Zip | 77002 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>　　　　Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br>**DECLARATION OF MAILING**<br>Chapter: 7<br><br>ECF Docket Reference No. 4 |

On 4/20/2021, I did cause a copy of the following documents, described below,

Summons in Adversary Proceeding ECF Docket Reference No. 4

Complaint Seeking Denial of Discharge 1

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, a Administrative Office of the United States Bankruptcy Courts, Approved Notice Provider.  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

DATED: 4/20/2021

　　　　　　　　　　　　/s/ Alicia Barcomb
　　　　　　　　　　　　Alicia Barcomb  24106276
　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　UNITED STATES TRUSTEES OFFICE
　　　　　　　　　　　　515 RUSK AVE., ROOM 3516
　　　　　　　　　　　　HOUSTON, TX  77002
　　　　　　　　　　　　713 718 4650

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>        Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br><br>Chapter: 7<br><br>ECF Docket Reference No. 4 |

On 4/20/2021, a copy of the following documents, described below,
Summons in Adversary Proceeding ECF Docket Reference No. 4

Complaint Seeking Denial of Discharge 1

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 4/20/2021

/s/ Jay S Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Alicia Barcomb
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002

PARTIES DESIGNATED AS "EXPEDITED NOTICE" WILL BE SERVED VIA USPS FIRST CLASS MAIL.
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM.

000012

FIRST CLASS

THOMAS CALVERT SCOTT
5710 SAVANNA PASTURE ROAD
KATY TX 77493

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>        Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br>**DECLARATION OF MAILING**<br>Chapter: 7<br><br>ECF Docket Reference No. 4-1 |

On 4/20/2021, I did cause a copy of the following documents, described below,

Summons in Adversary Proceeding ECF Docket Reference No. 4-1

Complaint Seeking Denial of Discharge 1

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, a Administrative Office of the United States Bankruptcy Courts, Approved Notice Provider.  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

DATED: 4/20/2021

/s/ Alicia Barcomb
Alicia Barcomb  24106276
Trial Attorney
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002
713 718 4650

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>        Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br><br>Chapter: 7<br><br>ECF Docket Reference No. 4-1 |

On 4/20/2021, a copy of the following documents, described below,
Summons in Adversary Proceeding ECF Docket Reference No. 4-1

Complaint Seeking Denial of Discharge 1

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 4/20/2021

/s/ Jay S Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Alicia Barcomb
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002

PARTIES DESIGNATED AS "EXPEDITE" WERE SENT NOTICE VIA USPS FIRST CLASS OR OVERNIGHT MAIL.
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM.

000015

FIRST CLASS

TAMMI LYNN SCOTT
5710 SAVANNA PASTURE ROAD
KATY TX 77493

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br>**DECLARATION OF MAILING**<br>Chapter: 7<br><br> ECF Docket Reference No. 4 |

On 4/21/2021, I did cause a copy of the following documents, described below,

Summons in Adversary Proceeding ECF Docket Reference No. 4

Complaint Seeking Denial of Discharge 1

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, a Administrative Office of the United States Bankruptcy Courts, Approved Notice Provider.  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

DATED: 4/21/2021

<u>/s/ Alicia Barcomb</u>
Alicia Barcomb  24106276
Trial Attorney
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002
713 718 4650

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>        Tammi Lynn Scott | CASE NO: 20-35029 |
| | ADVERSARY CASE NO: 21-03057 |
| Kevin M. Epstein, United States Trustee, | |
| v. | **CERTIFICATE OF SERVICE** |
| Thomas Calvert Scott and Tammi Lynn Scott | Chapter: 7 |
| | ECF Docket Reference No. 4 |

On 4/21/2021, a copy of the following documents, described below,
Summons in Adversary Proceeding ECF Docket Reference No. 4

Complaint Seeking Denial of Discharge 1

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 4/21/2021

/s/ Jay S Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Alicia Barcomb
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002

PARTIES DESIGNATED AS "EXPEDITED SERVICE" WERE SERVED VIA USPS FIRST CLASS MAIL.
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM.

CERTIFIED 7020 0640 0002 1337 4979

THOMAS CALVERT SCOTT
5710 SAVANNA PASTURE ROAD
KATY TX 77493

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:  Thomas Calvert Scott
       Tammi Lynn Scott

Kevin M. Epstein, United States Trustee,

v.

Thomas Calvert Scott and Tammi Lynn Scott

CASE NO: 20-35029

ADVERSARY CASE NO: 21-03057

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**
Chapter: 7

 ECF Docket Reference No. 4-1

On 4/21/2021, I did cause a copy of the following documents, described below,

Summons in Adversary Proceeding ECF Docket Reference No. 4-1

Complaint Seeking Denial of Discharge 1

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, a Administrative Office of the United States Bankruptcy Courts, Approved Notice Provider.  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

DATED: 4/21/2021

/s/ Alicia Barcomb
Alicia Barcomb  24106276
Trial Attorney
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002
713 718 4650

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  Thomas Calvert Scott<br>           Tammi Lynn Scott<br><br>Kevin M. Epstein, United States Trustee,<br><br>v.<br><br>Thomas Calvert Scott and Tammi Lynn Scott | CASE NO: 20-35029<br><br>ADVERSARY CASE NO: 21-03057<br><br>**CERTIFICATE OF SERVICE**<br><br>Chapter: 7<br><br>ECF Docket Reference No. 4-1 |

On 4/21/2021, a copy of the following documents, described below,
Summons in Adversary Proceeding ECF Docket Reference No. 4-1

Complaint Seeking Denial of Discharge 1

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 4/21/2021

/s/ Jay S Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Alicia Barcomb
UNITED STATES TRUSTEES OFFICE
515 RUSK AVE., ROOM 3516
HOUSTON, TX  77002

PARTIES DESIGNATED AS "EXPEDITED NOTICE" WERE NOT SENT THIS PDF VIA USPS FIRST CLASS MAIL.
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM.

CERTIFIED 7020 0640 0002 1337 4986

TAMMI LYNN SCOTT
5710 SAVANNA PASTURE ROAD
KATY TX 77493

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
ALICIA L. BARCOMB
TRIAL ATTORNEY
515 Rusk, Room 3516
Houston, TX 77002
Telephone: (713) 718-4650
Facsimile: (713) 718-4670

## UNITED STATES BANKRUTPCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | |
| | CASE NO. 20-35029 |
| Thomas Calvert Scott and Tammi Lynn Scott | |
|     Debtors | CHAPTER 7 |
| | |
| Kevin M. Epstein, | |
| United States Trustee, | |
| | |
|     Plaintiff | ADV. PROC. NO. 21-03057 |
| | |
| v. | |
| | |
| Thomas Calvert Scott and Tammi Lynn Scott | |
|     Defendants | |

### CERTIFICATE OF SERVICE

    I hereby certify that on June 22, 2021, the United States Trustee served a true and correct copy of the ORDER CANCELLING SCHEDULING CONFERENCE AND SETTING ELECTRONIC HEARING (ECF # 14) upon the Defendants listed below via U.S. Postal Service, First Class Mail and in the manner indicated below. Additionally, all other parties receiving electronic notice in the case were issued notice via ECF, on June 22, 2021.

                              By: /s/ *Alicia L. Barcomb*
                              Alicia L. Barcomb

DEFENDANTS:

Thomas Calvert Scott                          Tammi Lynn Scott
5710 Savanna Pasture Road                     5710 Savanna Pasture Road
Katy, TX 77493                                Katy, TX 77493
By email: tcscott2002@yahoo.com               By email: tammidaniel@ymail.com

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN DISTRICTS OF TEXAS
ALICIA L. BARCOMB
TRIAL ATTORNEY
515 Rusk St., Suite 3516
Houston, Texas 77002
Telephone: (713) 718-4650

## UNITED STATES BANKRUTPCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**Thomas Calvert Scott and Tammi Lynn Scott**<br>　　　　Debtors | CASE NO. 20-35029<br><br>CHAPTER 7 |
| **Kevin M. Epstein,**<br>**United States Trustee,**<br><br>　　　　Plaintiff<br><br>v.<br><br>**Thomas Calvert Scott and Tammi Lynn Scott**<br>　　　　Defendants | ADV. PROC. NO. 21-03057 |

## VERIFIED STATEMENT FOR ENTRY OF DEFAULT AND
## REGARDING DEFENDANTS' MILITARY STATUS

Now comes Alicia L. Barcomb, and states to the Court as follows:

1.　　　I am a trial attorney for the Office of the United States Trustee and represent the

interests of the U.S. Trustee in the above-captioned adversary proceeding. I am of sound mind,

over the age of 18 years old, and capable of making this verified statement. I have personal

knowledge of the facts stated herein, and if called as a witness, I can and will testify under oath in accordance with my statements herein.

2.      I reviewed the Complaint filed on April 19, 2021, in Adversary Case No. 21-03057.[1] I am familiar with the allegations that are in the Complaint. Presently, to the best of my knowledge, information, and/or belief, the allegations therein are true and correct.

3.      I served Defendants with the Summons and Complaint as required by Rule 4(c)(1) of the Federal Rules of Civil Procedure. As required by Rule 7004(a), I caused a copy of the Summonses and Complaint to be mailed to Defendants via U.S. First Class Mail and Certified Mail. Due to health concerns relating to Covid-19, the U.S. Trustee's Office used the services of BK Attorney Services, LLC ("Third-Party Mailer") to serve the Summonses and Complaint. I first submitted Thomas Calvert Scott's Summons and Complaint to the Third-Party Mailer on April 20, 2021, at approximately 11:46 AM CST. Following the submission, the Third-Party Mailer mailed the documents to Thomas Calvert Scott via U.S. First Class Mail that same day. I first submitted Tammi Lynn Scott's Summons and Complaint to the Third-Party Mailer on April 20, 2021, at approximately 11:50 AM CST. Following the submission, the Third-Party Mailer mailed the documents to Tammi Lynn Scott via U.S. First Class Mail that same day. I again submitted Thomas Calvert Scott's Summons and Complaint to the Third-Party Mailer on April 21, 2021, at approximately 8:27 AM CST. Following the submission, the Third-Party Mailer mailed the documents to Thomas Calvert Scott via U.S. Certified Mail (Tracking # 7020 0640 0002 1337 4979) that same day. I again submitted Tammi Lynn Scott's Summons and Complaint to the Third-Party Mailer on April 21, 2021, at approximately 8:31 AM CST. Following the submission, the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plaintiff's Motion for Entry of Default and Default Judgment under Fed. R. Bankr. P. 7055.

Third-Party Mailer mailed the documents to Tammi Lynn Scott via U.S. Certified Mail (Tracking # 7020 0640 0002 1337 4986) that same day.

4.       Following service of the Summonses and Complaint, the deadline for Defendants to file an answer or other responses expired on May 19, 2021. *See* Rule 7012(a), 9006(a)(1). Neither Defendant requested additional time to submit an answer or other response to the Complaint. As of the date of this verified statement, the docket in this adversary proceeding does not reflect an answer or other pleadings filed by either Defendant in response to the allegations in the Complaint. The Adversary Docket Sheet is attached to the Motion as Exhibit C. Further, as of the date of this verified statement, I have not received any communication from Defendants, formal or informal.

5.       Based on information that is presently available to me, Defendants are neither infants nor incompetent persons requiring special service in accordance with Rule 7004(b)(2). As such, service in accordance with Rule 7004(b)(1) is sufficient and appropriate under the circumstances.

6.       On May 24, 2021, I ran a search under Defendants' names in the Defense Manpower Data Center, an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System. That same day, I received Military Status Reports, which reflected that as of May 24, 2021, Tammi Lynn Scott was not on active military duty as to all branches of the Uniformed Services (Amy, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard) and Thomas Calvert Scott was on active military duty in the United States Army. Tammi Lynn Scott and Thomas Calvert Scott's Military Status Reports are attached to the Motion as Exhibit E and Exhibit F, respectively.

7.      Although not required by Fed. R. Civ. P. 55(b)(2), copies of the Motion and Verified Statement seeking entry of default and default judgment, which are being filed herewith, will be served upon Defendants by U.S. First Class Mail.

8.      In accordance with 28 U.S.C. § 1746 I hereby certify under penalty of perjury that the above allegations are true and correct.


RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE


DATED: June 15, 2021                        */s/ Alicia L. Barcomb*
                                            Alicia L. Barcomb, Trial Attorney
                                            TX State Bar No. 24106276
                                            United States Department of Justice
                                            Office of the United States Trustee
                                            515 Rusk Street, Suite 3516
                                            Houston, Texas 77002
                                            E-mail: alicia.barcomb@usdoj.gov
                                            Telephone: (713) 718-4650

Department of Defense Manpower Data Center

Results as of: Jul-28-2021 06:38:13 AM
000028
SCRA 5.8



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-5860
Birth Date:     ███-XX-1968
Last Name:      SCOTT
First Name:     TAMMI
Middle Name:    LYNN
Status As Of:   May-24-2021
Certificate ID: 5GSXPKWVCXYX2NG

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Jul-01-2021 06:30:22 AM

000030

SCRA 5.8



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:                XXX-XX-3708
Birth Date:         ███-XX-1976
Last Name:          SCOTT
First Name:         THOMAS
Middle Name:        CALVERT
Status As Of:       May-24-2021
Certificate ID:     LZGRXQ73TBZYV6C

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| Jun-07-2001 | Still Serving | Yes | Army Active Duty |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-35029-7 |
| | § | JOINTLY ADMINISTERED |
| THOMAS CALVERT SCOTT AND | § | HOUSTON, TEXAS |
| TAMMI LYNN SCOTT, | § | TUESDAY, |
| | § | NOVEMBER 24, 2020 |
| DEBTORS. | § | 11:09 A.M. TO 11:53 A.M. |

<u>341 MEETING OF CREDITORS (VIA ZOOM)</u>

CONDUCTED BY ALICIA BARCOMB
TRIAL ATTORNEY FOR THE UNITED STATES TRUSTEE

<u>APPEARANCES (VIA ZOOM)</u>:

FOR THE US TRUSTEE:          OFFICE OF THE US TRUSTEE
                             Alicia Lenae Barcomb, Esq.
                             515 Rusk Street
                             Ste. 3516
                             Houston, TX  77002
                             713-718-4650


FOR THE DEBTOR:              BAKER & ASSOCIATES, LLP
                             Reese W. Baker, Esq.
                             950 Echo Lane, Ste 300
                             Houston, TX  77024
                             713-869-9200


<u>TRANSCRIPTION SERVICE BY</u>:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
No ERO present; no logs.

000033

HOUSTON, TEXAS; TUESDAY, NOVEMBER 24, 2020; 11:09 A.M.

      MS. BARCOMB:  Good morning, my name is Alicia Barcomb and I am a trial attorney with the United States Trustee's Office.  Today is Tuesday, November 24th, 2020 at 11:09 a.m.

      This is the 341 meeting for Thomas and Tammi Scott, Case No. 20-35029.  This case is jointly administered with Case No. 20-35098, Maui Lifted Jeep Rentals.

      And for the Record, this matter is being digitally recorded and all parties are appearing by phone.

      Mr. Scott, could you please identify yourself for the Record?

      MR. SCOTT:  Yes, ma'am.  This is Thomas Scott.

      MS. BARCOMB:  And Mrs. Scott, can you please identify yourself for the Record?

      MRS. SCOTT:  This is Tammi Scott.

      MS. BARCOMB:  Thank you, Ms. Scott.  And would the Debtor's Counsel please identify yourself.

      MR. BAKER:  Reese Baker.

      MS. BARCOMB:  Thank you, Mr. Baker.

      Mr. Scott, will you also be appearing as the Debtor's representative for Maui Lifted Jeep Rentals?

      MR. SCOTT:  I will, yes, ma'am.

      MS. BARCOMB:  Thank you.

      Okay and I do need to administer an oath to both

of you.  So I'll start with Mr. Scott.

 (Mr. Scott sworn.)

  MR. SCOTT:  I do.

  MS. BARCOMB:  Thank you.

 (Mrs. Scott sworn.)

  MRS. SCOTT:  Yes.  I will.

  MS. BARCOMB:  Thank you.

  All right, so for the individual case, ordinarily I would have the opportunity to review your driver's license or photo id and your social security card.

  Because I am not able to do that, I will confirm with your counsel, Mr. Baker.

  Mr. Baker, have you reviewed Mr. and Mrs. Scott's driver's license or ID cards?

  MR. BAKER:  Yes, I have.

  MS. BARCOMB:  Do they bear a true and correct likeness to the Debtors?

  MR. BAKER:  They appear to, yes.

  MS. BARCOMB:  Okay.  And Mr. Baker, have you reviewed the Debtor's social security cards?

  MR. BAKER:  Yes.

  MS. BARCOMB:  And do the numbers on those cards match the last four on the petition?

  MR. BAKER:  Yes, they do.

  MS. BARCOMB:  Okay, thank you.

All right.  So, Mr. Scott, just going to ask you some preliminary questions here.  Are you currently employed?

MR. SCOTT:  I am, yes, ma'am.

MS. BARCOMB:  And how are you employed?

MR. SCOTT:  I'm employed with Maui Lifted Jeep Rentals.

MS. BARCOMB:  Okay.  And what's your position.

MR. SCOTT:  I'm the -- I'm really the general manager.  I do all the social media stuff, the advertising, all that kind of stuff.

MS. BARCOMB:  Okay.  Do you have any other sources of income?

MR. SCOTT:  Not at this time, no, ma'am.  But I am currently looking for another position as well.

MS. BARCOMB:  Okay.  And what type of work are you looking for?

MR. SCOTT:  I spent my whole life in the car business before I got to -- before we left and moved to Maui open up companies.  So I've got 15 year' experience in auto sales.

MS. BARCOMB:  Is that the type of work you're looking for something possibly in auto sales?

MR. SCOTT:  It is, yes, ma'am.  I'm also expanding that at this point because auto sales are down very much

right now.  There's not a lot of hiring going on in that area.  So I'm expanding out to other sales avenues that I can qualify for.

        MS. BARCOMB:  Okay.  And Mrs. Scott, are you currently employed?

        MRS. SCOTT:  I am through Maui Lifted Jeep Rentals.

        MS. BARCOMB:  Okay, and what is your position?

        MRS. SCOTT:  I do like the back office filing, that sort of thing, answering phone calls when necessary.

        MS. BARCOMB:  Okay, do you have any other sources of income?

        MRS. SCOTT:  I have been doing Instacart grocery delivery.

        MS. BARCOMB:  Okay.  How long have you been, I'll say, working with Instacart?

        MRS. SCOTT:  Probably about eight to nine weeks now.  A couple months.

        MS. BARCOMB:  Is that income steady or do you see like some fluctuations?

        MRS. SCOTT:  I'm sorry, can you repeat that question?

        MS. BARCOMB:  Sure.  I said is that income steady or do you see some fluctuations?

        MRS. SCOTT:  Oh, there's fluctuation, yes, ma'am.

MS. BARCOMB:  Okay.  All right.  Okay, regarding
Maui Lifted Jeep Rentals, does it have any other employees?

MR. SCOTT:  It does, yes, ma'am.  Spencer Wright
is on island.  He's my -- he's the guy that does all the
rentals and stuff right there on the island.  We're in Texas
ourselves.

MS. BARCOMB:  Okay.  So just the one employee?

MR. SCOTT:  One employee.  We are looking to hire
a car washer, so we might be adding one here shortly.  But
apparently there's one additional.

MS. BARCOMB:  Okay, I think you said his name was
Spencer Wright; is that correct?

MR. SCOTT:  That is correct, W-R-I-G-H-T.

MS. BARCOMB:  Okay.  Is Mr. Wright a W-2 or a
contract employee?

MR. SCOTT:  W-2.

MS. BARCOMB:  Okay.  Prior to the filing of the
Maui case, was that Debtor current on its employee wage
obligations?

MR. SCOTT:  Yes, ma'am.  We didn't have wage
obligations before that point.

MS. BARCOMB:  Okay.  And considering the time
since the petition was filed, is Maui -- when I say Maui I
am referring to, of course, Maui Lifted Jeep Rentals.  Is
Maui current on its post-petition employee withholding

taxes?

    MR. SCOTT:  Yes, ma'am.

    MS. BARCOMB:  So it kind of sounds like that --

    MR. BAKER:  Alicia?

    MS. BARCOMB:  Sure.

    MR. BAKER:  Yeah, it just kind of for a summary.
You know, Hawaii closed down.  They were over running the
business.  Left Hawaii, came back here and it was shut down
for I don't know five or six months until October 17.

    MR. SCOTT:  Seven.

    MR. BAKER:  And yeah, so realistically, nothing --
I think correct me on this -- but I don't think anything
really happened.  There was some very minor, minor stuff
with the business until Hawaii reopened.

    MS. BARCOMB:  Thanks.

    MR. BAKER:  Is that correct?

    MR. SCOTT:  That's correct, Reese.  We had a
couple locals every now and then maybe once a week that
rented Jeep for 100 to 200 bucks for a couple days.  So that
was it.  So he was there to kind of babysit that part of it.
And he also owns a jeep lot on island, so we kind of put our
stuff together so he could cancel his lot and all that stuff
and he put his jeeps in our lot.  We kind, you know, he was
helping us out earlier doing that kind of stuff, so.

    MS. BARCOMB:  Okay, thank you.  That was going to

me next, I guess, line of questioning.

So did Mr. Wright earn any wages prior to the filing?

MR. SCOTT:  He did not, no, ma'am.

MS. BARCOMB:  Okay.  Is he now earning employee wages?

MR. SCOTT:  He is, yes, ma'am.  As of October 15th.  When his company opened up he put everybody back on payroll.

MS. BARCOMB:  Okay.  Does he earn an hourly wage or a salary?

MR. SCOTT:  Salary.

MS. BARCOMB:  Did you say hourly?

MR. SCOTT:  Salary, $2500 a month.

MS. BARCOMB:  Okay.  Sorry.  Okay.

All right, so what caused the filing of these bankruptcies?

MR. SCOTT:  So like Mr. Baker just said, you know, with the companies in Hawaii, in the middle of March at some point -- I want to say it was around the 14th or so -- Hawaii shut down tourism completely, basically.

They said that nobody could come without a 14-day quarantine when they land on the island.  So, you know, vacationers won't come before because they're going to for seven to 10 days typically.  So tourism dropped

95-99 percent over the last seven months.

It is back as of October 15th with a negative COVID test.  So within three days of arrival as long as you have a negative COVID test, you can show up.  But a lot of people are kind of getting, you know, messed up and they're making a lot plans and then somebody in the family come up with COVID, and they can't come.

So it's -- you know, I think I saw, the last I saw was the island is back up to 20 to 25 percent capacity right now.  And lucky for us, you know, we're a local company. So, you know, people right now are buying homes so they're buying for us instead of enterprise, I think.  So, we've had a decent come back.  We're pretty sure we're going to make it just fine.

MS. BARCOMB:  Okay.  All right.  And what has been your understanding of how you-all will exit this bankruptcy?

MR. SCOTT:  So I believe we're going to, you know, be renegotiating the debts on the Jeeps.  The evaluations, you know, coming together with a new plan.  And then we're going to, you know, right about the time we had this thing out of plan is, you know, we've got the vaccine coming up, so we expect that Hawaii is going to go back to full force within the next six to 12 months.  You know, it may be nine to 12 months at the most.

So I think our plan that we're going to come up

with is going to work very well.  You know, we'll lower our
expenses just a little bit and I think we'll do great.

MS. BARCOMB:  Okay.  And I believe you said that
you and Mrs. Scott moved from Hawaii to Texas.  When did
that happen?

MR. SCOTT:  It was May 8th.  It was when we ran
out of money.  So, we had to come home.  We came home, we
lived with family and, you know, we came back with nine
suitcases with us.  Sold all our possessions.  We really had
nothing.  Like we had no money, we had no possessions, we
had nine suitcases' worth of clothes for me and my wife and
my son.  And that was May 8th.

MS. BARCOMB:  Okay.  And you mentioned selling
everything before you moved here.  Did you-all own a house
in Hawaii?

MR. SCOTT:  We didn't own a house, no, ma'am.
They are way too expensive.  That scared me a lot.  The
Florida condo thing in Hawaii, I just feel like the real
estate was bound to bust and it's like it probably is right
now.

So we didn't own a house, but you know our
furniture, we had a couch, we had a couple beds.  You know,
we had the TV.  You know everything that was inside the
house basically, pots and pans, we just had to liquidate
everything to get off island.

MS. BARCOMB:  Okay, were you-all renting the place where you-all were living?

MR. SCOTT:  We were, yes, ma'am.

MS. BARCOMB:  Okay.  Are you currently still residing with family?

MR. SCOTT:  No, ma'am.  We have our own house now. It was fully furnished.  When we got back, it was a perfect place for us.

MS. BARCOMB:  Okay.  So, you had a rental in Hawaii and now you're living in a rental in Texas; is that correct?

MR. SCOTT:  That's correct, yes, ma'am.

MS. BARCOMB:  Okay.  All right.  Okay, so I'm going to ask you just a few questions about the petition that was filed in both cases, the Schedules that were filed, and the Statements of Financial Affairs.

Do you-all have access to those documents?

MR. SCOTT:  I have both files.  I don't have my financial affairs paperwork in front of me, but I do have both Schedules.

MS. BARCOMB:  Okay.  So, let me look at -- Mr. Baker, I did want to ask you one question about the individual bankruptcy.  Did you intend to re-amend the petition to add Ms. Scott or?  I know that that amended petition was struck.  Were you going to file another one or

just leave it as the Court's Order granting that motion?

      MR. BAKER:  Yeah, I guess we probably ought to amend the petition.  I hadn't thought about that because we'd done it -- we'll go on and get an amended petition on file.

      MS. BARCOMB:  Okay.  Thank you.

      MR. BAKER:  I have the documents.

      MS. BARCOMB:  Okay.  So, Mr. Scott, the petition that I have in your individual case only bears your signature on it, so I'm just going to ask some questions about this document first.

      And I believe, is that also true of the business?  No, Mrs. Scott, you signed the business petition; is that right?

      MR. SCOTT:  I believe she signed it, yes, ma'am.

      MS. BARCOMB:  Okay, excellent.  All right, so we'll start with Mr. Scott, I'm going to ask you some questions about the individual case first.

      Mr. Scott, did you sign the Petition, Schedules, Statements and related documents?  And is the signature your own?

      MR. SCOTT:  Yes, ma'am.

      MS. BARCOMB:  Did you read the Petition, Schedules, Statements and related documents before you signed them?

MR. SCOTT:  I did, yes, ma'am.

MS. BARCOMB:  Are you personally familiar with the information contained in the Petition, Schedules, Statements and related documents?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  To the best of your knowledge, is the information contained in the Petition, Schedules, Statements and related documents true and correct?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  Are there any errors or omissions to bring to my attention at this time?

MR. SCOTT:  Not to my knowledge.

MS. BARCOMB:  Okay.  Are all of your assets identified on the Schedules?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  Did you list all of your creditors on the Schedules?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  And have you previously filed bankruptcy?

MR. SCOTT:  I have, yes, ma'am.  Maybe -- I think I filed a Petition somewhere -- I think it's like 12, 14 years ago possibly, a Chapter 7 personally.

MS. BARCOMB:  Okay.  I show a 2008 case.  Does that sound correct?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  Okay.  And you said that was a Chapter 7 case?

MR. SCOTT:  That's correct.

MS. BARCOMB:  Okay, and did you receive a discharge in that case?

MR. SCOTT:  I did, yes, ma'am.

MS. BARCOMB:  Did you and your wife file jointly or did you just file on your own?

MR. SCOTT:  It was from a previous divorce, so she was not involved yet.

MS. BARCOMB:  Okay.  I understand.

MR. SCOTT:  She was not in it.

MS. BARCOMB:  Okay.  All right and then -- okay, so Mrs. Scott, if I recall correctly on the Schedules, you signed the Schedules in the individual -- when I say individual, I mean you-all's personal case.

And then it looks like you also signed the Schedules for Maui.  Is that your understanding, Mrs. Scott?

MRS. SCOTT:  Yes.

MS. BARCOMB:  Okay.  So when I ask you these questions, I'm referring to those two documents collectively, okay?

MRS. SCOTT:  Okay.

MS. BARCOMB:  Okay.  You're going to get the same

questions.  Here we go.

          Mrs. Scott, did you sign the Petition in the Maui
case, the Schedules, Statements and related documents in
both cases?  And is the signature your own?

          MRS. SCOTT:  Yes.

          MS. BARCOMB:  Did you read the Petition,
Schedules, Statements and related documents before you
signed them?

          MRS. SCOTT:  Yes.

          MS. BARCOMB:  Are you personally familiar with the
information contained in the Petition, Schedules, Statements
and related documents?

          MRS. SCOTT:  Yes.

          MS. BARCOMB:  To the best of your knowledge, is
the information contained in the Petition, Schedules,
Statements and related documents true and correct?

          MRS. SCOTT:  Yes.

          MS. BARCOMB:  Are there any errors or omissions to
bring to my attention at this time?

          MRS. SCOTT:  Not to my knowledge, not at this
time.

          MS. BARCOMB:  Okay.  Are all of Maui's assets
identified on the Schedules?

          MRS. SCOTT:  Yes.

          MS. BARCOMB:  Did Maui list all of it's creditors

on the Schedules?

MRS. SCOTT:  Yes.

MS. BARCOMB:  And have you personally filed bankruptcy before?

MRS. SCOTT:  No.

MS. BARCOMB:  Okay.  Has Maui previously filed bankruptcy?

MRS. SCOTT:  No.

MS. BARCOMB:  Okay, thank you.

Okay, and when was Maui formed?

MR. SCOTT:  The initial form is a LLC was December of 2017.  We opened for business in January of 2018.

MS. BARCOMB:  Okay, was Maui formed in Hawaii or in Texas?

MR. SCOTT:  We did it from Texas in Hawaii.  We filed on one of Hawaii's websites so it was filed in Hawaii.

MS. BARCOMB:  Okay, so it's a Hawaii --

MR. SCOTT:  It's a Hawaii LLC.

MS. BARCOMB:  Perfect.  Okay.  And did you-all provide a certificate of good standing to the US Trustee regarding that entity?

MR. SCOTT:  I believe we did.

Reese, did we, correct?

MR. BAKER:  I think we did.  We have one. I thought we had sent it to you.  If not, we can send it to

you.

MS. BARCOMB:  Just confirm that.  Hold on.

Yeah, Reese, if you wouldn't mind just sending that again.  I don't see it in the file.  So that would be helpful to have.

MR. BAKER:  Sure, I'll do that.

MS. BARCOMB:  Thank you.

All right.  Mr. Scott, are all of yours and Mrs. Scott's assets insured?

MR. SCOTT:  We don't personally have any insurable -- the vehicles that we have are insured under the company policy, that's correct.  Other than that, we don't have any insurable assets.

MS. BARCOMB:  Okay, so the vehicles that you and Ms. Scott drive here in Texas, are those insured?

MR. SCOTT:  They're insured, yes, ma'am.

MS. BARCOMB:  Okay.  And then are the vehicles of the company also insured?

MR. SCOTT:  They are, yes, ma'am.

MS. BARCOMB:  Okay.  And have you added the US Trustee as a party of notice to those insurance certificates?

MR. SCOTT:  We have, yes, ma'am.

MS. BARCOMB:  Okay.  Reese, I don't know if you've had an opportunity to send that over as well, but I'm not

seeing it in the file.

MR. BAKER:  Okay, I thought we sent that over.
I'll send that to you.

MS. BARCOMB:  I appreciate it, thank you.

Okay, and if I recall correctly, Mr. Scott, the
Debtors were attempting to establish a Debtor-In-Possession
bank account at -- was it Chase Bank; is that correct?

MR. SCOTT:  We tried Chase Bank, we've tried
Capital One, we've tried Wells Fargo and none of them can
figure out how to open it correctly because they cannot put
the EIN in there.

MS. BARCOMB:  Okay, is that for your personal
account or for the account of the company?

MR. SCOTT:  For the personal account.  For the
company account, we have all kind of direct deposits, direct
stuff from our website and all that stuff.  I think that we
had talked about not putting a DIP on that one.

MS. BARCOMB:  Okay, so the US Trustee's position
is that all pre-petition bank accounts must be converted
into Debtor-in-Possession accounts.  If I recall correctly,
from the motion filed by your counsel, the issue was whether
or not you-all would be able to use debit cards, which --

MR. SCOTT:  That was for our personal, yes, ma'am.

MS. BARCOMB:  Okay.  I believe the motion also
referenced a debit card for Maui Lifted Jeep Rentals.  So we

will request that pre-petition bank accounts be closed and that Debtor-in-Possession bank accounts be established.

I understand that if there is an issue with that, we can definitely revisit it.

MR. SCOTT:  Okay.

MS. BARCOMB:  But just be aware of the US Trustee's position on that.

MR. SCOTT:  Thank you.

MR. BAKER:  Okay, we're going to go on and file a motion to allow them to continue to use their bank accounts because none of the banks you-all are recommending will comply or help out.  They've basically told them they won't do it.

MS. BARCOMB:  Okay, thank you.

MR. BAKER:  I don't --

MR. SCOTT:  Okay.

MS. BARCOMB:  So is the Bank of Hawaii account for Maui Lifted Jeep Rentals still an open and active account?

MR. SCOTT:  It is still open, yes, ma'am.

MS. BARCOMB:  And where is your personal bank account?

MR. SCOTT:  My personal one is Capital One.  My wife's personal one is Chase.

MS. BARCOMB:  Okay.

MR. SCOTT:  I've basically shut down mine.  I can

shut down mine and use my wife if that makes a difference, but it don't matter to us really.  Just consolidating.

MS. BARCOMB:  So, the US Trustee's position is that there is one Debtor-in-Possession bank account.  But I'll let you discuss that with your counsel.

MR. SCOTT:  Fair enough.

MS. BARCOMB:  So I do see the Bank of Hawaii account on here under your personal bankruptcy ending in 8245.  Do you still have that account open?

MR. SCOTT:  I believe that is the number to our business account.  That sounds correct.

MS. BARCOMB:  So the business account has the last four of 4325.  Did you have two accounts with Bank of Hawaii?

MR. SCOTT:  4325 is the business account.  That's a correct.  Was there a different account that you just gave me?  I'm sorry.

MS. BARCOMB:  Yes, 8245 is listed on the personal Schedules.

MR. SCOTT:  Okay, so that was my personal account. That one is closed.  That was my personal one in Hawaii.  We did close that one.

MS. BARCOMB:  Okay.  And where did you transfer those funds?

MR. SCOTT:  Capital One.  Well, there was no funds

in there to transfer.

MS. BARCOMB:  Okay.  So I do see the Capital One account on here.  And I believe you said your wife also has a Chase account; is that correct?

MR. SCOTT:  That's correct.

MS. BARCOMB:  Okay.  So the Chase account is not listed in your Schedules.  Is there any reason for that?

MR. SCOTT:  No.  I kind of thought that we did, but maybe we didn't.  Apparently (indiscernible) now, but if you're saying it's not there, I want to take your word for it because you know where it is.  It's oversight at best.  I apologize.  I really thought we did that.

MRS. SCOTT:  Do I need to give you that information now or do we need to update something?

MS. BARCOMB:  We would request a formal amendment to this Schedules to add that account.  But I am going to ask you some questions about the Chase account.  Just, what is the balance of that account?

MRS. SCOTT:  If you will give me one second.  It's about $900.

MS. BARCOMB:  Okay, and approximation is fine.

MRS. SCOTT:  Okay.

MR. SCOTT:  So originally we filed the Schedules, I filed first.  I think I just put my two banks on there. And whenever we added Tammi, I think I didn't get that added

to it.

        MS. BARCOMB:  Okay.

        MRS. SCOTT:  Okay, the account is $875.25.

        MS. BARCOMB:  Okay, that's the current balance?

        MRS. SCOTT:  That is correct.

        MS. BARCOMB:  Okay, thank you.

        Okay, Mr. Scott, how many Jeeps are used by Maui in its business?

        MR. SCOTT:  I'm sorry, how's that question worded again?

        MS. BARCOMB:  How many Jeeps are used by Maui in its business?

        MR. SCOTT:  Used by Maui, 15.

        MS. BARCOMB:  Okay.  Are all 15 of those Jeeps titled in your name?

        MR. SCOTT:  No, ma'am.

        MS. BARCOMB:  Okay, how many are in your name?

        MR. SCOTT:  Ten are in my name and Tammi's name. And five are in Tammi's name and the company's name.

        MS. BARCOMB:  Okay.

        MR. BAKER:  Alicia, those are specifically listed on each of the individual filings, along with -- and they all each tie to the lenders.

        MS. BARCOMB:  Okay, great.  Thank you.

        Do either you individually or does the business

own any real property?

   MR. SCOTT:  No, ma'am.

   MRS. SCOTT:  No.

   MS. BARCOMB:  Okay.  On the business's Schedules, I do see a priority tax claim to the Internal Revenue Service with an amount listed as unknown.  What does that relate to?

   MR. SCOTT:  We have -- on the business's tax memo?

   MS. BARCOMB:  Correct.

   MR. SCOTT:  The business is up-to-date on the taxes.  I don't think we have any unknown taxes due at this point.

   MS. BARCOMB:  Okay.

   MR. SCOTT:  All of our federal taxes are paid up. I don't believe there's any other business tax debt.

   MS. BARCOMB:  Okay.  What about personally?  Do you have any personal IRS --

   MR. SCOTT:  Personally, yes, ma'am we had a -- personally, yes, ma'am, we had an audit a couple years ago. We still owe some money on.  I don't remember that exact amount.  It might be on my file.

   Is it not on my file or on our personal files?

   MS. BARCOMB:  I'm just asking of what your knowledge is of that personal tax debt.

   MR. SCOTT:  Oh, I apologize.  I think it's

somewhere in the neighborhood of 20,000 -- 15 to 20,000,
somewhere in that range.

       MS. BARCOMB:  Okay.  And was that for failure to
report income or what resulted in that?

       MR. SCOTT:  I guess you can call it that.  I had a
misunderstanding on our -- we did a 401k early withdraw to
buy our house and I thought that I read that that was exempt
and we did not include it in our taxes.  So there was a -- I
don't know it was $40-50,000 that we took out that we had to
pay taxes on and that changed our tax brackets and
everything and made a big mess.

       MS. BARCOMB:  Okay.

       MR. SCOTT:  I no longer do our taxes.  The
accountant does.

       MS. BARCOMB:  Did you say that you took an early
401k withdrawal to buy a house; is that correct?

       MR. SCOTT:  That's correct, yes, ma'am.

       MS. BARCOMB:  Okay, when was that?

       MR. SCOTT:  Oh, boy, seven years ago.

       MRS. SCOTT:  Seven to eight years ago, yeah.

       MS. BARCOMB:  Okay, so did you purchase the house
about seven years ago?

       MR. SCOTT:  Yes, ma'am.

       MS. BARCOMB:  Okay, and when did you sell that
house?

000056

MR. SCOTT:  Six to seven.  We sold it right before we went to Maui.  So we sold it three years ago.

MS. BARCOMB:  Okay.  So the vehicles that you and Mrs. Scott drive here in Texas, what vehicles are those?

MR. SCOTT:  So my wife has a 2017 GMC Arcadia. It's financed by the company and her through TD Auto Finance.  My personal truck is still in Hawaii.  I have not gotten permission to ship it back yet from First Hawaiian Bank so it's still sitting there.  I don't have a vehicle here personally yet.

MS. BARCOMB:  Okay.  Do you-all intend to exempt those vehicles?

MR. SCOTT:  It was originally our intention, but I'm just not 100 percent sure at this point.  If that's okay.  I'm not sure if that's okay or not.

MS. BARCOMB:  I think -- did you say your wife had a 2019 GMC Arcadia; is that right?

MR. SCOTT:  2017.

MS. BARCOMB:  2017 Arcadia?

MR. SCOTT:  Yes.

MS. BARCOMB:  Okay, and what truck do you drive, Mr. Scott?

MR. SCOTT:  Mine is a 2018 Chevrolet Silverado. And these are on the Schedules as well.  And it's financed with Personal Land Bank.

MRS. SCOTT:  But that one is still on Maui.  It's not here --

MS. BARCOMB:  I understand.

MRS. SCOTT:  -- in Texas

MS. BARCOMB:  Okay.  Are there any other professionals that will be hired in this case?

MR. BAKER:  Yes, we'll probably be filing in a day an application to hire Robert Norris (phonetic).  He's an accountant.

MS. BARCOMB:  Okay.  Are there any other motions that I need to be made aware of in this case?

MR. BAKER:  We'll probably file a motion on the bank accounts.  Other than that, I'm not aware of any.  I don't think that there are any cash collateral issues because I've looked through with Mr. Scott all the loan documents for the Jeeps and there's -- and as far as we can tell there's nothing in there that gives any liens or any interest at all on the rental proceeds from the Jeeps.

MS. BARCOMB:  Okay.

MR. BAKER:  Nor anything else that has any (glitch in the audio).

MS. BARCOMB:  Okay.  Mr. Scott, do you understand the requirement to file Monthly Operating Reports for both cases?

MR. SCOTT:  I do, yes, ma'am.

MS. BARCOMB:  Okay, who will be preparing those reports?

MR. SCOTT:  Bob Norris.

MS. BARCOMB:  Okay.  And Mr. Scott, do you understand that the Subchapter Five Trustee's fees will be paid from the Debtors' estates?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  Okay.  All right.  I think that's all the questions I have now.  I'll reserve any questions if I have any follow-up from others.

So what I'll do now is I'll just go through the list to see if anybody has any questions for the Debtors.

Ms. Macanelli (phonetic), do you have any questions?

MS. MACANELLI:  Yes, I have one.

MS. BARCOMB:  Okay, go ahead.

MS. MACANELLI:  Where -- have you-all changed the car titles or are they as they were originally registered when they were purchased?

MR. SCOTT:  Same as original registration when they were purchased.

MS. MACANELLI:  So they're registered to Texas -- to TEDCU the vehicles that are financed through TEDCU, are those still registered in Texas?

MR. SCOTT:  I'm sorry.  No, I apologize.  They're

registered in Hawaii, but they're still registered under the same name of the same way they were titled, but they are registered in Hawaii now.  They are in Hawaii.

MS MACANELLI:  Can you clarify that?

MR. SCOTT:  Yes, I'm sorry.  They're registered in the same exact names they were before, but they are registered now in Hawaii.  The Jeeps are in Hawaii.  They are registered in Hawaii.

MS. MACANELLI:  So you've retitled the vehicles in Hawaii?

MR. SCOTT:  No, ma'am.  We haven't titled anything.  You have the title.  We have changed the registration to Hawaii.  They are still titled the exact same way they were when we purchase them.

MS. MACANELLI:  Okay.  That's the only question I have.

MS. BARCOMB:  Okay, thank you.

Ms. Byman, do you have any questions for the Debtors?

THE TRUSTEE:  I do have a couple.

MS. BARCOMB:  Okay.

THE TRUSTEE:  Mr. and Mrs. Scott, have you received any notifications from any creditors regarding a motion to lift stay or a request for surrender of the vehicle despite the bankruptcy?

000060

MR. SCOTT:  We have gotten a couple surrender letters, but they -- when I call them, they won't take my information for the case and everything, one of them.  But they have quit calling, so maybe they finally took the information.  But we did have a couple.

THE TRUSTEE:  Okay.  And with respect to the shut down of Maui and really no tourism, did you-all apply for and/or receive any PPP or other pandemic relief?

MR. SCOTT:  We did.  Both the EID and the PPP. And we've included those as insufficient.

THE TRUSTEE:  And would you seek forgiveness of either?

MR. SCOTT:  Did we seek -- we did not.  We didn't have any payroll for that period, so we could not.

THE TRUSTEE:  Okay, so the payroll started post-petition?

MR. SCOTT:  Correct.  Almost right after. Correct.

THE TRUSTEE:  Okay.  I think you kind of answered this before, but I just want to kind of explore them. (indiscernible) bankruptcy in terms of complaining, I don't want you to tell me what you talked to your lawyer about.

But I am curious why you wanted to try the reorganization instead of surrendering the cars based on, you know, the debt being more than they're worth and just

starting over when Maui was back up and running.

MR. SCOTT:  Surrendering the cars would have left us without business.  The cars are the business, the Jeeps.

THE TRUSTEE:  Okay.  And right now, I mean, how is business looking on a day-to-day basis?  Are you having customers each day, several a day?

MR. SCOTT:  We are mostly -- so we only have 15 Jeeps.  And most people come and rent them for a week at a time.  So we only have a capacity to do a couple a day.  But yeah, we're probably about I would say right now currently probably 70-80 percent booked up, which is pretty well for right now.

THE TRUSTEE:  Yeah, that's very good.  Okay, and then how far out --

MR. SCOTT:  We had to go through a crisis to get to that level, but we obtain some pretty decent revenue.

THE TRUSTEE:  Okay.  And what does it look like in terms of how far out are you booked up?

MR. SCOTT:  Through the end of the year we're pretty booked right now.  I would say over 70 percent, 60 to 70 percent through the end of the year.

The holidays in Hawaii are the major, major tourism dates.

THE TRUSTEE:  Okay.  Are there efforts -- I mean, are there any leased vehicles that you think would be better

suited to sell and just purchase something new or do you think all are worth keeping to reorganize the business?

MR. SCOTT:  I think they're definitely all worth keeping.  They're also 18 or newer with less than 40,000 miles, so they're all worth keeping.

THE TRUSTEE:  Okay.  You said less than 40,000?

MR. SCOTT:  All of them, yes, ma'am.

THE TRUSTEE:  Okay.  I mean, as we talked about at the initial Debtor interview, I mean, my role essentially is to kind of assist at this point in ways that I can.  I'm trying to help you-all with a consensual plan.

Do you anticipate any delay in getting your plan filed by the required date?

MR. SCOTT:  The only thing that would mess up our plan or anything going forward is Hawaii shutting down. That would obviously, you know, throw a wrench in it for us. But so long as they don't shut down again, you know, we've got vaccines coming and treatments coming, so.  So long as they don't shut down again, I see us doing just fine.

If they do, you know, that's something -- that's the scary part that we just don't know.  That the world just don't know.  It's what the heck is going to happen next week, next month, next year.  We're very optimistic.

THE TRUSTEE:  Sure.  In terms of plan filing, I know at the status conference you-all talked about probably

filing your two personal -- the personal, individual cases, one plan and combining that with the business plan.  Is that still the strategy you-all are looking at?  So it would be one plan of reorganization?

MR. SCOTT:  I think one total plan.  I'll refer to Reese, as well, but I think we can put everything together in one plan that'd be great for the business and personal because it's all -- it's all the same, you know, title stuff for us.

THE TRUSTEE:  On your individual case, the rental where you were living in Hawaii, is there money still owed on that or were you able to break the lease with no damages?

MR. SCOTT:  No, ma'am, we were able to break the lease with no damages.  The lady that was there before us wanted to come back, so it worked out perfect for us.

THE TRUSTEE:  Oh, very good.  Okay.

Okay, those are all my questions.

MS. BARCOMB:  Thank you.

I did have some follow up questions that I want to ask.

Mr. Scott, I see on your statement of income in the personal case, that both you and Mrs. Scott are -- have a salary of 2,500 each.  Is that coming from the business, the Maui business?

MR. SCOTT:  It is, yes, ma'am.

MS. BARCOMB:  Okay, when did you-all start receiving those salaries?

MRS. SCOTT:  First, October 31st.

MR. SCOTT:  Was the first paycheck we received was on the 31st.  Then it was for a partial payment.  It was like a one week paycheck.

MRS. SCOTT:  One week, yeah.

MS. BARCOMB:  The 31st, October 31st of this year?

MR. SCOTT:  Yes, ma'am.  Sorry, October 31st this year.

MS. BARCOMB:  Okay, so just recently started receiving that salary, correct?

MRS. SCOTT:  Yes.

MR. SCOTT:  That's correct.  Just as soon as the island opened back up, we (indiscernible) you know, have income.  We went back to work.

MS. BARCOMB:  Okay, so I understand that the business was formed in December 2017, went operational, I think you said, January of 2018; is that correct?

MR. SCOTT:  Yes, ma'am.

MS. BARCOMB:  Okay, so thinking about let's say 2019, did either you or Mrs. Scott receive any income from the business?

MR. SCOTT:  We did.  We're an S-corp and we filed our S-corp late so we didn't actually have W-2 paychecks.

But our -- oh, my goodness, what's the official word for
that?  The owner's discretionary income was over $200,000.

        MS. BARCOMB:  Okay.

        MR. SCOTT:  Plus I think we had 37,000 in income
that we reported through the taxes.

        MS. BARCOMB:  All right.  And do you know when you
stopped receiving income from the business?

        MR. SCOTT:  Somewhere around March-April.  Right
in the -- you know, right about the time we ran out of
money.  Honestly I guess maybe May, somewhere in there.

        MRS. SCOTT:  Oh, stopped receiving income for
ourselves.

        MS. BARCOMB:  Correct.

        MR. SCOTT:  You're talking about personally?

        MS. BARCOMB:  Yes, personally.

        MRS. SCOTT:  Yeah, that was correct.

        MR. SCOTT:  So somewhere around that -- by May-ish
I would say at the latest.  It could have been before that
for sure.

        MRS. SCOTT:  I think it was more like the end of
March, very beginning of April because income just stopped.
You know, tourism stopped.  Nobody was renting Jeeps.
People were canceling their reservations and wanting their
money back.

        MR. SCOTT:  I'm saying second quarter, second

quarter this year.

MS. BARCOMB:  Okay.  So is there any reason in the business bankruptcy why those distributions or I think you call it discretionary income to both you and your wife are not listed in the Statement of Financial Affairs?

MR. SCOTT:  I didn't know that it needed to be possibly.  It was before -- I think, wasn't there like a six period we had to put out or something like that?

MS. BARCOMB:  So one of the questions refers to a 90-day period.  Which I believe -- your operations were shut down for the 90 days prior to filing.

But there is a period of one year before the filing that for payments made that benefit an insider.  And I'm curious why that income wasn't listed as a payment that benefited an insider.

MR. SCOTT:  I may have missed -- not noticed -- now that's 200,000 wasn't made in this year.  It was made all throughout last year.  But I would have to double look.  I'm sorry I might have overlooked something.  I didn't do anything on purpose for sure.  But I may have misunderstood or overlooked something.

MS. BARCOMB:  Okay.  Mr. Baker, would you please look into that a little further and amend the SOFA, if necessary?

MR. BAKER:  Yes, we'll do that.

MS. BARCOMB:   Thank you.

The other thing that I wanted to follow up on that Ms. Byman asked about was the loans received as a result of the pandemic.

I see here that the US Small Business Administration is listed for $150,000 as an EID loan.  I believe you also testified that you received a PPP loan.

MR. SCOTT:   Correct.

MS. BARCOMB:   Did you list the PPP loan in here? Is it just under a different name?  Oh, I see it now.  Never mind don't answer that.

MR. SCOTT:   Bank of Hawaii, number one, yes.

MS. BARCOMB:   Yeah, I see that.  Sorry.  Okay.

MR. SCOTT:   Bank of Hawaii originated it for the SBA, so.

MS. BARCOMB:   Perfect.  Thank you.

All right and last question that I have is why is there no gross revenue listed for the calendar year of 2018?

MR. SCOTT:   There probably should be.  We were in business.  We made 300-and-some-thousand or we took in 300-and-some-thousand that year.

MS. BARCOMB:   Okay.  I'll just note that as a necessary amendment then to the Statement of Financial Affairs, as well.

Okay.  All right, I think that's all the follow up

questions that I have.  Just to allow everybody an
opportunity to ask any other follow up questions.

        Ms. Macanelli, do you have any other questions?

        MS. MACANELLI:  No, I'm fine, thank you.

        MS. BARCOMB:  Thank you.

        Ms. Byman, did you have any other questions?

        THE TRUSTEE:  I do.  I just have one.

        Regarding the business cases, you just talked
about some plans of payment kind of setting in and tourism
was shutting down.  Clients were asking for refunds.  Were
you able to refund all business or all of those requests or
are there still some creditors that could not receive a
refund?

        MR. SCOTT:  To my knowledge, everybody has been
refunded that asked for one at this point.  We had some
refunds, we had some credit card disputes.  We let all the
credit card disputes go through.  We didn't dispute any of
them.  We really honestly couldn't dispute any of them.

        So I believe everybody has been paid back.

        THE TRUSTEE:  Okay, thank you.

        MS. BARCOMB:  Okay, Mr. Baker, is there anything
else that you wanted to put on the Record today?

        MR. BAKER:  I have forwarded to you the
certificate with standing for Maui and also all the
insurance information with the US Trustee on it.

MS. BARCOMB:  Excellent.  Thank you very much.

MR. BAKER:  But other than that --

MS. BARCOMB:  I see that now.  Thank you.

All right.  If there's nothing else to put on the Record here today, I will conclude this 341 meeting.  All parties are excused and have a Happy Thanksgiving.

(Meeting adjourned at 11:53 a.m.)

**\* \* \* \* \***

*I certify that the foregoing is a correct transcript to the best of my ability due to the condition of the electronic sound recording of the ZOOM/telephonic proceedings in the above-entitled matter.*

*/S/ MARY D. HENRY*

*CERTIFIED BY THE AMERICAN ASSOCIATION OF ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

*JTT TRANSCRIPT #63405*

*DATE:  FEBRUARY 7, 2021*

<table>
<tr><td colspan="4"><strong>Fill in this information to identify your case:</strong></td></tr>
</table>

| Debtor 1 | Thomas | Calvert | Scott |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Tammi | Lynn | Scott |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: _____ Southern District of Texas

Case number (if known): _____ 20-35029-H3-11

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

# Official Form 106I

## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| **1. Fill in your employment information.** | | | |
| If you have more than one job, attach a separate page with information about additional employers. | **Employment status** | ☑ Employed  ☐ Not Employed | ☑ Employed  ☐ Not Employed |
| | **Occupation** | Manager | Office Manager |
| Include part time, seasonal, or self-employed work. | **Employer's name** | Maui Lifted Jeep Rentals, LLC | Maui Lifted Jeep Rentals, LLC |
| | **Employer's address** | 190 Papa Pl A | 190 Papa Pl A |
| Occupation may include student or homemaker, if it applies. | | Number Street | Number Street |
| | | | |
| | | Kahului, HI 96732-3540 | Kahului, HI 96732-3540 |
| | | City          State    Zip Code | City          State    Zip Code |
| | **How long employed there?** | 2 years | 2 years |

### Part 2:  Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions.) If not paid monthly, calculate what the monthly wage would be. | $2,500.00 | $2,500.00 |
| 3. | **Estimate and list monthly overtime pay.** | + $0.00 | + $0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | $2,500.00 | $2,500.00 |

000071

| Debtor 1 | **Thomas** | **Calvert** | **Scott** | |
|---|---|---|---|---|
| Debtor 2 | **Tammi** | **Lynn** | **Scott** | Case number *(if known)* 20-35029-H3-11 |
| | First Name | Middle Name | Last Name | |

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here.................................................➔ | 4. | $2,500.00 | $2,500.00 |
| 5. | List all payroll deductions: | | | |
| | 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $205.96 | $205.96 |
| | 5b. **Mandatory contributions for retirement plans** | 5b. | $0.00 | $0.00 |
| | 5c. **Voluntary contributions for retirement plans** | 5c. | $0.00 | $0.00 |
| | 5d. **Required repayments of retirement fund loans** | 5d. | $0.00 | $0.00 |
| | 5e. **Insurance** | 5e. | $0.00 | $0.00 |
| | 5f. **Domestic support obligations** | 5f. | $0.00 | $0.00 |
| | 5g. **Union dues** | 5g. | $0.00 | $0.00 |
| | 5h. **Other deductions.** Specify: _____ | 5h. + | $0.00 | + $0.00 |
| 6. | **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. | $205.96 | $205.96 |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $2,294.04 | $2,294.04 |
| 8. | List all other income regularly received: | | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** | | | |
| | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $0.00 | $0.00 |
| | 8b. **Interest and dividends** | 8b. | $0.00 | $0.00 |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** | | | |
| | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $0.00 | $0.00 |
| | 8d. **Unemployment compensation** | 8d. | $0.00 | $0.00 |
| | 8e. **Social Security** | 8e. | $0.00 | $0.00 |
| | 8f. **Other government assistance that you regularly receive** | | | |
| | Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. | | | |
| | Specify: _____ | 8f. | $0.00 | $0.00 |
| | 8g. **Pension or retirement income** | 8g. | $0.00 | $0.00 |
| | 8h. **Other monthly income.** Specify: __See additional page__ | 8h. + | $0.00 | + $750.00 |
| 9. | **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $0.00 | $750.00 |
| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse | 10. | $2,294.04 | + $3,044.04 = $5,338.08 |

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: _____    11. + $0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies    12. $5,338.08

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

☐ No.
☑ Yes. Explain: | Debtors are seeking additional employment. |

| Debtor 1 | **Thomas** | **Calvert** | **Scott** | |
|----------|-----------|-------------|-----------|--|
| Debtor 2 | **Tammi** | **Lynn** | **Scott** | |
| | First Name | Middle Name | Last Name | Case number *(if known)* 20-35029-H3-11 |

|  | Amount |
|--|--------|
| **8h. Other monthly income For Debtor 1** | |
| Income from All Other Sources | $0.00 |
| **8h. Other monthly income For Debtor 2 or non-filing spouse** | |
| Income from All Other Sources | $750.00 |



## Permissible Purpose

DPPA - 4 - For use in connection with a civil, criminal or arbitral legal proceeding or legal research.
GLB - L - For use by a Law Enforcement Agency, self-regulatory organizations or for an investigation on a matter related to public safety.
VOTERS - 5 - Use in connection with a non-commercial purpose.

## Disclaimer

Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application. By accessing this product you agree to comply with our General Terms and Conditions and our CLEAR Supplier Additional Terms.

## Report section(s) with no matches

Death Records, Other SSNs Associated with Subject, Other Records/Names Associated with Subject's SSN, Canadian White Pages, Marriage Records, Divorce Records, Marijuana Related Business Records, Healthcare Licenses, NPI Records, Military Records, Political Donors, Voter Registrations, Global Sanctions, Healthcare Sanctions, Excluded Parties List System, OFAC Infractions, D&B Market Identifier Records, Significant Shareholders, Businesses Registered at Subject's Addresses, Docket Records, UCC Filings, Waterfront Residency, Real Property Pre-Foreclosure Records, Real-Time Vehicles, Vehicle Registered at Subject's Addresses, FAA Aircraft Registrations

*The data provided to you by CLEAR may not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment, or for any other purpose authorized under the FCRA.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THOMAS CALVERT SCOTT & | § | CASE NO. 20-35029 |
| TAMMI LYNN SCOTT | § | |
| | § | |
| DEBTORS. | § | CHAPTER 7 |

| | | |
|---|---|---|
| | § | |
| | § | |
| KEVIN M. EPSTEIN | § | |
| UNITED STATES TRUSTEE | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| vs. | § | ADVERSARY NO. 21-03057 |
| | § | |
| THOMAS CALVERT SCOTT & | § | |
| TAMMI LYNN SCOTT | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |

## SWORN AFFIDAVIT OF DINA CLINE

Before me, the undersigned authority, on this day appeared Dina Cline, who being by me duly sworn stated as follows:

1. I am an individual who resides at 33 Akoni Place, Paia, HI 96779.

2. I initially met Thomas Calvert Scott (hereinafter "Mr. Scott") in 2018 in order to retrieve a vehicle part from him, pursuant to an advertisement on Craigslist.

3. In early 2020, I came into contact with Mr. Scott again, pursuant to a business deal regarding Maui Lifted Jeep Rentals, LLC between Mr. Scott and Spencer Wright.

4. I have known Mr. Scott for over 1 year. During this time, I have engaged in many conversations with Mr. Scott.

5. I have developed a business relationship with Mr. Scott.

6. Throughout this time that I have known Mr. Scott, he has never mentioned that he was in the military or had any affiliation with the military.

7. It is my understanding and belief that Mr. Scott was not in the military.

STATE OF HAWAII           §
                                   §
COUNTY OF MAUI          §

    I, Dina Cline, Affiant, having been duly sworn, hereby state on oath that the for the Sworn Affidavit filed in this cause is a true and complete statement, to the best of my knowledge, and further acknowledge the foregoing instrument.

_____
Dina Cline, Affiant

**SUBSCRIBED AND SWORN TO BEFORE ME BY** Dina Cline, on the __7th__ day of __June__, 2021, to certify which witness my hand and seal of office.

_____
Notary Public, State of Hawaii

Date: 6/7/2021   # Pages: 2
Name: Joel C. Groomes 2nd   Circuit
Doc. Description: _____
Sworn Affidavit
_____
Notary Signature
NOTARY CERTIFICATION
16 october 2023
my commission
expires

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **THOMAS CALVERT SCOTT &** | § | **CASE NO. 20-35029** |
| **TAMMI LYNN SCOTT** | § | |
| | § | |
| **DEBTORS.** | § | **CHAPTER 7** |

| | | |
|---|---|---|
| | § | |
| | § | |
| **KEVIN M. EPSTEIN** | § | |
| **UNITED STATES TRUSTEE** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 21-03057** |
| | § | |
| **THOMAS CALVERT SCOTT &** | § | |
| **TAMMI LYNN SCOTT** | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |

## SWORN AFFIDAVIT OF SPENCER WRIGHT

Before me, the undersigned authority, on this day appeared Spencer Wright, who being by me duly sworn stated as follows:

1.  I am an individual who resides at 33 Akoni Place, Paia, HI 96779.

2.  In early 2020, I met Mr. Scott in order to discuss a business deal regarding Maui Lifted Jeep Rentals, LLC.

3.  I have known Thomas Calvert Scott (hereinafter "Mr. Scott") for over 1 year. During this time, I have engaged in many conversations with Mr. Scott.

4.  I have developed a business relationship with Mr. Scott.

5.  Throughout this time that I have known Mr. Scott, he has never mentioned that he was in the military or had any affiliation with the military.

6.  It is my understanding and belief that Mr. Scott was not in the military.


STATE OF HAWAII                         §
                                        §
COUNTY OF MAUI                          §

    I, Spencer Wright, Affiant, having been duly sworn, hereby state on oath that the for the Sworn Affidavit filed in this cause is a true and complete statement, to the best of my knowledge, and further acknowledge the foregoing instrument.


                                        Spencer Wright, Affiant


**SUBSCRIBED AND SWORN TO BEFORE ME BY** Spencer Wright, on the ____7ᵀᴴ____ day of
___June___, 2021, to certify which witness my hand and seal of office.


                                        Notary Public, State of Hawaii

JOEL C. GROOMES
COMMISSION NO.
NOTARY PUBLIC
LS
11-312
STATE OF HAWAII

Date: 6/7/2021  # Pages: 2
Name: Joel C. Groomes 2nd Circuit
Doc. Description: _____
Sworn Affidavit
_____
        Notary Signature
NOTARY CERTIFICATION
16 october 2023
   my commission
      expires

JOEL C. GROOMES
COMMISSION NO.
NOTARY PUBLIC
LS
11-312
STATE OF HAWAII

000078

# USPS Tracking®

FAQs >

**Track Another Package  +**

**Tracking Number:** 70200640000213374979

Remove ✕

Your item was delivered to an individual at the address at 5:09 pm on April 24, 2021 in KATY, TX 77493.

## ✓ Delivered, Left with Individual

April 24, 2021 at 5:09 pm
KATY, TX 77493

Feedback

**Get Updates** ⌄

---

**Text & Email Updates** ⌄

---

**Tracking History** ⌃

**April 24, 2021, 5:09 pm**
Delivered, Left with Individual
KATY, TX 77493
Your item was delivered to an individual at the address at 5:09 pm on April 24, 2021 in KATY, TX 77493.

---

**April 23, 2021, 4:55 pm**
Departed USPS Regional Facility
NORTH HOUSTON TX DISTRIBUTION CENTER

---

**April 23, 2021, 10:39 am**
Arrived at USPS Regional Facility

000079

NORTH HOUSTON TX DISTRIBUTION CENTER

---

**April 22, 2021, 4:15 am**
Departed USPS Regional Facility
SPOKANE WA DISTRIBUTION CENTER

---

**April 21, 2021, 7:13 pm**
Arrived at USPS Regional Facility
SPOKANE WA DISTRIBUTION CENTER

---

**Product Information** ⌄

---

**See Less** ⌃

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

# USPS Tracking®

FAQs ⟩

## Track Another Package ✛

**Tracking Number:** 70200640000213374986

Remove ✕

Your item has been delivered to the original sender at 2:18 pm on May 24, 2021 in HOUSTON, TX 77002.

## ⊘ Delivered, To Original Sender

May 24, 2021 at 2:18 pm
HOUSTON, TX 77002

**Get Updates** ⌄

---

**Text & Email Updates** ⌄

---

**Tracking History** ⌃

**May 24, 2021, 2:18 pm**
Delivered, To Original Sender
HOUSTON, TX 77002
Your item has been delivered to the original sender at 2:18 pm on May 24, 2021 in HOUSTON, TX 77002.

---

**May 23, 2021, 11:42 pm**
Departed USPS Regional Facility
NORTH HOUSTON TX DISTRIBUTION CENTER

---

**May 19, 2021, 9:49 am**
Unclaimed/Being Returned to Sender

Feedback

KATY, TX 77494

000081

Reminder to Schedule Redelivery of your item

**April 26, 2021, 1:14 pm**
Notice Left (No Authorized Recipient Available)
KATY, TX 77493

**April 25, 2021**
In Transit to Next Facility

**April 24, 2021, 10:46 am**
Arrived at USPS Regional Facility
NORTH HOUSTON TX DISTRIBUTION CENTER

**April 22, 2021, 4:15 am**
Departed USPS Regional Facility
SPOKANE WA DISTRIBUTION CENTER

**April 21, 2021, 8:14 pm**
Arrived at USPS Regional Facility
SPOKANE WA DISTRIBUTION CENTER

Feedback

**Product Information** ⌄

**See Less** ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

000082

**FAQs**

Feedback